# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| KENNETH W. DUDA, | ) | Case No. 07-40163-HJB |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| In re: | ) | |
| | ) | Chapter 7 |
| PAMELA ANN BROWN, | ) | Case No. 05-47251-HJB |
| | ) | |
| Debtor | ) | |
| | ) | |
| JOSEPH B. COLLINS | ) | |
|     CHAPTER 7 TRUSTEE and | ) | |
| STEVEN WEISS | ) | |
|     CHAPTER 7 TRUSTEE, | ) | |
| | ) | Adversary Proceeding |
| | ) | No. 07-04192 |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH W. DUDA, | ) | |
| PRISCILLA A. DUDA, | ) | |
| PAMELA ANN BROWN, and | ) | |
| BANK OF AMERICA, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION**

Before the Court is a complaint (the "Complaint") filed by Joseph B. Collins ("Collins"), Chapter 7 trustee of Kenneth W. Duda ("Kenneth"), against Kenneth, Priscilla A. Duda ("Priscilla"), Pamela Ann Brown ("Pamela"), and Bank of America (together, the "Defendants"). Also to be determined are competing motions (the "Sale Motions") by Collins and Steven Weiss ("Weiss"), Chapter 7 trustee of Pamela, seeking leave to sell certain property located at 18 Aldrich Street in Northfield, Massachusetts (the "Property").[1]

During the course of a multi-day trial, each of the non-trustee parties testified in a manner best described as inconsistent in both the accuracy and credibility of the versions they presented. Having made its best efforts to sift through that testimony, this Court makes the following findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.[2]

I.     FACTS AND TRAVEL OF THE CASE

On April 4, 1998, Kenneth and Priscilla purchased the Property, a two-family home, for the purpose of providing their daughter Pamela and her child with a residence. At that time, Pamela was struggling financially and not in a position to purchase the Property and secure a mortgage on her own. Accordingly, Kenneth and Priscilla purchased the Property themselves and obtained a mortgage in their own names. At the time of the closing,

---

[1] Following allowance of his Sale Motion, Collins also seeks leave to employ Aaron Posnick & Company, Inc. as Auctioneer.

[2] Federal Rule of Bankruptcy Procedure Rule 7052 provides that "Rule 52 F. R. Civ. P. applies in adversary proceedings." Federal Rule of Civil Procedure 52(a)(1) provides, in relevant part: "the court must find the facts specially and state its conclusions of law separately."

2

Pamela contributed some funds to the purchase, but the evidence indicates that the transaction was almost completely financed by Kenneth and Priscilla.[3]

After the 1998 purchase, Kenneth made some improvements to the Property, and, shortly thereafter, Pamela moved into one of the two units. However, the terms of the arrangement between Pamela and her parents were never made explicit. Kenneth and Priscilla continued to hold title to the Property, while Pamela lived in and largely managed the Property on their behalf. Although there was some contradictory testimony on this point, it appears that Pamela paid the mortgage, taxes, and other expenses from a combination of her own funds and the rental proceeds paid by the second tenant. Kenneth and Priscilla contributed to the costs of maintaining the Property when Pamela was unable to do so. The Court is persuaded that Kenneth and Priscilla intended that once Pamela had the financial wherewithal to procure her own mortgage and make regular payments they would turn over the Property to her.

In 2002, Kenneth and Priscilla refinanced the first mortgage on the Property with Fleet Bank, securing an indebtedness of $77,000. In 2005, however, Kenneth and Priscilla experienced marital difficulties, and they separated. For reasons stated at trial but not patently logical or obvious, Priscilla asked Kenneth to deed his interest in one of the two

---

[3] There was significant inconsistent testimony as to whether Kenneth and Priscilla or Pamela made the down payment for the Property. Because the checks for the down payment came from Kenneth's and Priscilla's bank account, it seems most plausible that the funds were theirs. Pamela testified, however, that she gave her parents the money, and then they paid the down payment and the closing costs from the funds she gave them, but little evidence was presented to support that version of events. The Court finds, by a preponderance of the evidence that, while the down payment was paid by Kenneth and Priscilla, Pamela paid the closing costs. Regardless, Kenneth and Priscilla took title to the Property.

properties they owned to her alone.[4]  Since Kenneth was to remain in the marital home, Kenneth transferred, for consideration of one dollar, his interest in the Property to Priscilla in November of 2005, making Priscilla the sole owner. The 2002 Fleet Bank mortgage remained on the property in the names of both Kenneth and Pamela.

In the meantime, Pamela's financial problems had continued. She filed a Chapter 7 petition with this Court on September 29, 2005.  Weiss was appointed her Chapter 7 trustee.  In her bankruptcy schedules, Pamela indicated that she had no interest in any real property; rather, she rented a unit in the subject Property for the sum of $550 per month. Based on the seemingly uncontradicted assertions of Pamela, Weiss concluded that there were no assets available for a distribution to unsecured creditors.  Pamela was granted a discharge under 11 U.S.C. § 727 on February 6, 2006, and the case closed ten days later.

In late 2006, Kenneth began preparations for a bankruptcy petition for himself.  After many years of health problems which culminated with a 2006 month-long hospitalization, Kenneth had accumulated approximately $46,000 in unsecured medical and credit card debt.  He filed a Chapter 7 case on January 17, 2007.  In his accompanying schedules, signed on January 11, no interest in the Property was reflected.

By January of 2007, Pamela had finally secured financing for herself from Bank of America in order to facilitate the purchase of the Property and payment of the Fleet Bank mortgage.  On January 11, 2007, the same day Kenneth signed his bankruptcy schedules, the coincidence of which was never explained, Priscilla transferred her interest in the

---

[4] There was conflicting evidence relative to the purpose for the transfer (whether to protect Priscilla or to protect Pamela).  All of the evidence, however, shares a common nexus that the transfer was made to protect the Property from Kenneth's creditors.

Property. However, for reasons not immediately (or subsequently) obvious to this Court, Priscilla's deed described the conveyance as follows: "PRISCILLA DUDA . . . hereinafter called GRANTOR, grants to PAMELA A. BROWN *joined by her husband, KENNETH DUDA* . . . hereinafter called GRANTEES" (italics supplied).[5]

Kenneth was unaware the Property had been conveyed to him at the time he signed his bankruptcy petition and prior to the filing of the bankruptcy case. Nor did Bank of America notice the problem, and the note and mortgage executed in favor of Bank of America on the same day were signed only by Pamela, leaving Kenneth's fifty percent interest unencumbered.

After Collins was appointed Kenneth's Chapter 7 trustee, he filed the instant adversary proceeding against the Defendants to claim the estate's interest in the Property. As the adversary proceeding progressed, Weiss, formerly Pamela's Chapter 7 trustee, hypothesized that Pamela's estate might also have an interest in the Property if it had been concealed by Pamela during her bankruptcy case. He, therefore, filed a motion to reopen Pamela's case, which motion was subsequently granted.[6]

---

[5] Although Priscilla and Pamela have argued that the words "joined by her husband, KENNETH DUDA" were simply put in the wrong place and should have been contiguous to the words "PRISCILLA DUDA," that theory does not explain why the grantor is set forth in the singular and the grantees in the plural.

[6] All parties waived the automatic stay to resolve any concern that the reopening of the case may have barred the continuation of this adversary proceeding. (Hr'g Tr. 6, Feb. 5, 2009).

After disposing of some preliminary issues on summary judgment, further described below, this Court consolidated all of the remaining issues surrounding the disposition of the Property for trial and, after trial, took the case under advisement.[7]

II.     POSITIONS OF THE PARTIES

The Complaint contains four counts.  The First Count sought a finding that the January 11, 2007 deed transferred a fifty percent interest in the Property to Kenneth prior to the commencement of his bankruptcy case, thereby causing that interest to constitute, pursuant to 11 U.S.C. § 541(a)(1),[8] a component of Kenneth's bankruptcy estate; and, correspondingly, leaving that interest unencumbered by the Bank of America mortgage. Adopting the arguments made by Collins in open court, this Court granted summary judgment on Count I as to all of the Defendants, but reserved until trial a right claimed by Weiss to an equitable interest on behalf of Pamela's bankruptcy estate.

By the Second Count of the Complaint, Collins seeks to avoid the November 29, 2005 transfer of Kenneth's fifty percent interest in the Property to Priscilla, on grounds of actual and constructive fraud.  Having avoided that transfer, Collins argues that the subsequent transfers were also voidable, notwithstanding 11 U.S.C. § 550(b),[9] because

---

[7] Kenneth subsequently passed away. However, his passing does not impact the outcome in this case.  See Fed. R. Bankr. P. 1016 (stating "[d]eath . . . of the debtor shall not abate a liquidation case under chapter 7 of the Code.")

[8] Section 541(a)(1) states that the bankruptcy estate shall include "all legal or equitable interests of the debtor in property as of the commencement of the case."

[9] Section 550 reads in relevant part:

(a) . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

6

those transferees gained their interests in bad faith and with knowledge of the transfers' voidability. The Third Count seeks to deny Kenneth's discharge on the grounds that he knowingly and fraudulently failed to disclose his fifty percent interest in the Property on his bankruptcy petition, filed six days after the January 11, 2007 transfer. Finally, the Fourth Count seeks leave to sell the entire Property, pursuant to 11 U.S.C. § 363(h),[10] if the interest Collins has acquired through Kenneth's interest is found to be less than one hundred percent.

Weiss intervened in this adversary proceeding on the side of Collins, though his interests diverged with those of Collins particularly on Count II. Weiss argued that Pamela always had equitable title to the Property, including at the time she filed her bankruptcy case in 2005. And because the Property was not disclosed on Pamela's schedules and no exemption therein was claimed, Weiss contends that he is entitled to all of the Property on behalf of Pamela's bankruptcy estate.

---

  (1) the initial transferee of such transfer or the entity whose benefit such transfer was made; or

  (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from--

  (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

  (2) any immediate or mediate good faith transferee of such transferee.

[10] Section 363(h) outlines the precise grounds under which a trustee may sell the interest of a co-owner of estate property.

The Defendants in this case take a largely united stance claiming the legitimacy of all of the transfers. They argue that each transfer of the Property was made in good faith and without any intent to defraud or conceal. Therefore, the Defendants argue that all transfers are valid, including the transfer made on January 11, 2007 which deeded Pamela a one-half interest in the property subject to a mortgage from Bank of America. Because the Court has already determined that Collins is entitled to Kenneth's interest in the Property, the Defendants support partition of the Property rather than allowance of a sale under § 363(f).[11] And Kenneth, insistent that he was unaware of his interest in the Property at the time of his bankruptcy case, demands his entitlement to a discharge under § 727.

### III. DISCUSSION

#### A. **Count I: Declaratory Judgment**

Although Collins was awarded summary judgment on Count I, any rights held by Weiss, as the Chapter 7 trustee of Pamela's bankruptcy estate were reserved. As Chapter 7 trustee of Pamela's estate, Weiss's interest, if any, is the interest that Pamela held in the Property at the time her bankruptcy case was filed on September 29, 2005. Record title was then held by Kenneth and Priscilla. Accordingly, Pamela could have held at most an equitable interest in the Property at the date of the commencement of her bankruptcy case. The environment has, however, now changed. Kenneth has filed a Chapter 7 bankruptcy case and Pamela's interest, if any, must be evaluated in the context of Kenneth's case.

---

[11] Section 363(f) states the grounds under which the trustee may sell property "free and clear of any interest in such property of an entity other than the estate."

Section 544(a)(3) of the Bankruptcy Code[12] provides in relevant part that:

> [t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property . . .

This artificially created status provides a Chapter 7 trustee with the ability to defeat an "equitable interest in the Property if under Massachusetts law a bona fide purchaser . . . of the Debtor's interest in the subject Property would have prevailed" over the equitable interest holder on the commencement date of the bankruptcy case. Clark v. Kahn (In re Dlott), 43 B.R. 789, 793 (Bankr. D. Mass. 1983). Massachusetts law, in turn, provides that a conveyance of land shall not be valid against any person without actual notice unless the transfer is recorded. Mass. Gen. Laws ch. 183, § 4 (2003). The term "actual notice" under the statute has been strictly construed by Massachusetts courts. See Emmons v. White, 788 N.E.2d 557, 566 (Mass. Ct. App. 2003); Tramontozzi v. D'Amicis, 183 N.E. 2d 295, 297 (Mass. 1962); McCarthy v. Lane, 16 N.E.2d 683, 685 (Mass. 1938).

If Pamela had an interest in the Property, it was not recorded. And Collins, as Chapter 7 trustee of Kenneth's bankruptcy case, is deemed, pursuant to § 544(a)(3), to be without notice of an unrecorded interest. Accordingly, employing his bona fide purchaser status under § 544(a)(3), Collins's rights, on behalf of Kenneth's estate, supercede Weiss's rights, on behalf of Pamela's bankruptcy estate.

Weiss further argues that Pamela's estate is entitled to an interest in the Property by way of a resulting trust. That argument, too, must fail. Weiss contends that Kenneth

---

[12] Unless otherwise noted, all statutory references will be to Title 11 of the United States Code. 11 U.S.C. §§ 101, et seq.

9

and Priscilla enjoyed only bare legal title to the Property and that the Property was held in a resulting trust for Pamela from 1998 until she was deeded the Property in 2007. (Weiss, Mem. Proposed Findings of Fact & Conclusions of Law, 16). Under Massachusetts law, "when a person pays the purchase price of property and takes title in the name of another, the beneficial interest in the property enures to the person who paid the purchase price by way of resulting trust." Collins v. Curtin, 89 N.E.2d 211, 212 (Mass. 1949) (citations omitted). See also Meskell v. Meskell, 243 N.E.2d 804, 806 (Mass. 1969) (stating "[a] resulting trust typically arises when a transfer of property is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration.") However, key to the creation of a resulting trust is that the parties intended that a trust relationship be created. Lammerding v. Lammerding, No. 99-P-2101, 2001 WL 1339167, at *1 (Mass. App. Ct. Oct. 31, 2001). See also Cook v. Young, 11 N.E. 752, 753 (Mass. 1887) (resulting trusts are created only "to the extent of such intended interest"); 76 Am. Jur. 2d Trusts § 138 (2009) ("[i]ntention, although only presumed, implied, or supposed by law from the nature of the transaction or from the facts and circumstances accompanying the transaction . . . is always an element of a resulting trust.")

      Despite contradictory testimony on several points, this Court finds insufficient evidence to conclude that Kenneth, Priscilla, and Pamela intended to create a resulting trust, vesting in Pamela an equitable interest in the Property from 1998 forward. While it seems clear that Pamela paid for the closing costs for the 1998 purchase, there is no substantiated evidence that Pamela paid the down payment for the Property. Notwithstanding Pamela's assertions to Collins in discovery that she funded the down

payment for the Property (Pamela Depo. 75), the cancelled checks in the amount of the down payment presented at trial were drawn from Kenneth's and Priscilla's joint account. Furthermore, it is telling that when Kenneth and Priscilla separated, it was Priscilla to whom Kenneth transferred his interest, not Pamela.

Because this Court finds and rules that Pamela did not have an equitable interest in the Property at the time she filed her bankruptcy case, Weiss, as Chapter 7 trustee, has no interest in the Property.

B.     **Count II: Fraudulent Transfer**

In the Second Count of the Complaint, Collins seeks to avoid Kenneth's 2005 transfer of his fifty percent ownership in the Property to Priscilla. Collins contends that, pursuant to various sections of the Bankruptcy Code and Massachusetts law, the 2005 transfer constituted a fraudulent transfer under the Bankruptcy Code, and consequently is void or voidable against Priscilla and all subsequent transferees.

There is little doubt that the 2005 transfer of Kenneth's interest in the Property from Kenneth to Priscilla was a fraudulent transfer, recoverable by Collins, pursuant to 11 U.S.C. § 544(b) and Mass. Gen. Laws ch. 109A. The stated consideration for the transfer was in the sum of one dollar, and the trial testimony of Kenneth established unequivocally that if Kenneth was not insolvent at the time of the transfer, he was surely made so by the transfer itself. But avoidance of this transfer creates an unusual problem for Collins. Pursuant to § 550(a), Bank of America is deemed a "mediate transferee" of an immediate transferee of that transfer,[13] protected from recovery, pursuant to § 550(b)(2), if in "good

---

[13] As to the 2005 transfer of Kenneth's interest, Priscilla is the initial transferee; Pamela and Kenneth are the immediate transferees and Bank of America is a mediate transferee of Pamela.

11

faith." Knowledge of the voidability of the transfer is not implicated. There is no evidence whatsoever that Bank of America lacked good faith at any relevant time. And, even if notice of the voidability of the transfer were relevant, there is no evidence whatsoever that Bank of America had notice of the voidability of *the 2005 transfer*. Moreover, although an argument could be made that, notwithstanding its good faith, Bank of America still had notice of Kenneth's purported interest as grantee under the 2007 deed and therefore is entitled only to half of the Property as its collateral, that is the same argument made by Collins in Count I.

Section 550(d) provides that "[t]he trustee is entitled to only a single satisfaction. . ." Accordingly, since Collins, as Chapter 7 trustee of Kenneth's bankruptcy estate would still be left with half of the value of the Property, unencumbered by the mortgage of Bank of America, Count II is moot in light of the relief already provided by the Court under Count I.

C. **Count III: Objection to Discharge**

Section 727(a) lists the grounds under which a debtor should be denied a discharge. Section 727(a)(4) provides that discharge shall be denied if "the debtor knowingly and fraudulently, in or in connection with the case–(A) made a false oath or account." In Count III of the Complaint, Collins alleges that Kenneth "knowingly and fraudulently, in connection with his bankruptcy case, made a false oath in that he failed to disclose the ownership interest in the Northfield Real Estate . . ." (Compl. ¶ 52).[14] At trial, Collins failed to prove,

---

[14] This Court limits its review of Count III to the only grounds stated, i.e., Kenneth's knowing failure to list the Property on his bankruptcy petition. The Court's determination in that regard is not intended to validate Kenneth's other testimony at trial.

by a preponderance of the evidence, that Kenneth knew, on the date of case commencement, that he had acquired an interest in the Property by virtue of the January 11 deed. Accordingly, judgment must be awarded to Kenneth, unfortunately post mortem, on the question of his entitlement to a discharge under § 727.

    D.    **Count IV: Sale of Co-Owner's Interest in the Property**

Due to this Court's findings on Count I, this Court is now required to address whether under these circumstances Collins should be authorized to sell the Property pursuant to § 363(h). Section 363(h) provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if–
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

The Trustee has the burden of establishing all four elements required under § 363(h). In re Hajjar, 385 B.R. 482, 488 (Bankr. D. Mass. 2008) (citing Kovacs v. Sargent (In re Sargent), 337 B.R. 661, 666 (Bankr. N.D. Ohio 2006)). As § 363(h)(4) is inapplicable, the Court must now turn to the remaining three requirements.

13

The first requirement is that Collins show that partition of the Property is impracticable. Pamela suggests that because the Property has two separate units with separate electric panels and furnaces it is ideal for condominiumization. (Trial Tr. 24-25, April 27, 2009). However, "condominiumization is not a form of partition." 56 Assoc. & 57 Assoc. v. Diorio, 381 B.R. 431, 436 (D. R.I. 2008) (upholding the decision of the bankruptcy court). And in particular cases, "converting [a] building to condominiums [makes] no economic sense." Id.

Even if condominiumization was an acceptable form of partition, it would be impractical and illogical to force Collins to go through the extensive and presumably expensive process of condominiumization under Mass. Gen. Laws ch. 183A. Collins testified that Kenneth's estate currently possesses only about $1,000–a far cry from the amount that would be necessary to create a condominium project (Trial Tr. 30, April 27, 2009). To force Collins to bear the costs of condominium creation and then force the estate to try to sell its interest to a grantee whose unit would include co-ownership of the common areas with a disappointed Pamela would significantly devalue the interest owned by the estate. And even this assumes that the estate's one-half interest bears some real relationship to the value of either of the two units. The Court, therefore, concludes that, in this case, partition is impractical.

The second requirement is that Collins must demonstrate that the sale of estate's undivided interest would realize significantly less for the estate than the sale of entire property. Collins testified at trial that the sale of partial interests "almost always [realizes] less than the fair value of the property, the reason being no one wants to buy a partial interest in the property." (Trial Tr. 19, April 27, 2009). In this case, he stated that "[e]xcept

14

perhaps other family members, I don't know who would want to buy the Kenneth Duda bankruptcy estate's interest in the property and co-own it with Pamela Brown. It's simply something an investor wouldn't do." (Trial Tr. 20, April 27, 2009). That testimony was unrebutted and the Court agrees with Collins's conclusions.

The third requirement is that the benefit to the estate outweigh the detriment to the co-owner. With regard to § 363(h)(3), a shifting burden applies:

> Although the Plaintiff [Trustee] bears the ultimate burden of proof on this issue, the Plaintiff's initial burden is only to show that sale of the property free of the Defendant's interest would produce a benefit to the estate: that the estate's share of the net proceeds would exceed existing liens on the Debtor's interest in the property. If the Defendant then shows that such a sale would produce a detriment to him, the Trustee must show that the benefit to the estate is greater than the detriment to the Defendant.

Gray v. Burke (In re Coletta Bros. of N. Quincy, Inc.), 172 B.R. 159, 165 (Bankr. D. Mass. 1994). However, "[i]n deciding whether to allow a sale, the Court must consider the economic and emotional detriment which the co-owner would face in being evicted." Neylon v. Addario (In re Addario), 53 B.R. 335, 338 (Bankr. D. Mass. 1985).

Collins has met the initial burden of showing the sale would produce a benefit to the estate. Because Kenneth's fifty percent interest is not subject to any encumbrances, a sale will realize fifty percent of the sale price for Kenneth's bankruptcy estate. Without the allowance of a § 363(h) sale, Collins holds a fifty percent interest in a piece of property that he would not be able to sell for fair value, if at all. This interest is virtually the estate's only asset, as the estate only holds $1,000 otherwise. But Pamela has made it impossible to demonstrate the detriment to her. She refused to testify, invoking her rights under the Fifth Amendment to the United States Constitution. Without any testimony as to Pamela's

15

detriment were the entire Property sold, she was unable to meet her burden under § 363(h)(3). The Court is thereby forced to conclude that the showing by Collins under § 363(h)(3) was unrebutted.[15]

Because one of the elements of § 363(h) is inapplicable and because Collins has met his burden on the other three, Collins is entitled to a ruling in his favor on Count IV.

IV.  CONCLUSION

Pursuant to Count I of the Complaint, this Court finds that Collins as Chapter 7 trustee in bankruptcy for the estate of Kenneth holds a fifty percent undivided interest in the Property unencumbered by the mortgage of Bank of America. That interest is also unencumbered by any interest held by Weiss, as Chapter 7 trustee in the bankruptcy of Pamela. The Court holds that Weiss's interest, if any, is void as against the interest of Collins as Chapter 7 trustee of Kenneth's estate.[16]

Count II of the Complaint should be dismissed as moot. Kenneth (or more properly said, his probate estate) is entitled to judgment under Count III and will be granted a discharge. Finally, on Count IV, this Court finds that Collins has met his burden under

---

[15] This Court is permitted to draw adverse inferences from Pamela's invocation of the Fifth Amendment. Citizens Bank of Mass. v. Marrama (In re Marrama), 331 B.R. 10, 16 (D. Mass. 2005). At the very least, Pamela's invocation of the Fifth Amendment could be seen as an acknowledgment of some very significant inconsistencies in the various statements she made under oath. But the Court need not make those inferences. And Collins need not demonstrate here any bad acts or bad intentions by Pamela. It is as simple as this: Collins met his burden of proof under § 362(h)(3); Pamela, in failing to testify, failed to meet hers. Accordingly, Collins prevails under § 362(h)(3).

[16] Accordingly, Weiss's motions for leave to sell the Property and to retain an auctioneer will be denied.

§ 363(h). Accordingly, Collins's "Motion for Authorization of Sale of Property 18 Aldrich St., Northfield, MA" and "Motion to Employ Aaron Posnick & Company, Inc. As Auctioneer" will be GRANTED.

A separate judgment and orders consistent with this Memorandum will issue accordingly.

DATED:   January 15, 2010

By the Court,

*[signature]*

_____
Henry J. Boroff
United States Bankruptcy Judge
